KANNE, Circuit Judge,
dissenting.
Because I believe the Speaker’s likelihood of success on the merits is greater than the majority deems it, and the balancing of the equities favors granting a stay, I respectfully dissent.
The only time the Supreme Court considered the constitutionality of legislative prayer it approved of the practice. Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). A key dispute in this case, as it appears now, is whether Marsh rests on a line drawn between sectarian and nonsectarian legislative prayer. While there is caselaw supporting the proposition that Marsh approves of only nonsectarian legislative prayer, there still remain powerful arguments to the contrary, not the least of which is the Marsh majority’s curious ambiguity on the point. Moreover, other factual differences may drive the ultimate ruling in this case. The nuanced nature of Establishment Clause jurisprudence in general and the recognized status of legislative prayer as holding its own unique place in our nation’s history make it difficult, if not impossible, to say that the Speaker lacks a significant probability of success on the merits.
While I see strong legal arguments for both parties as to the merits, my real disagreement with the majority centers on the balancing of the equities. At the outset, it should be noted that the harm to the plaintiffs is not that their speech is being restricted. Thus,' this is not a case where absent immediate relief speech will be diluted or lost. See Elrod v. Burns, 427 U.S. 347, 373-74 n. 29, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (emphasizing the importance of the timeliness of political speech in conveying the intended message) *404 (citations omitted); see also ACLU v. City of St. Charles, 794 F.2d 265, 274 (7th Cir.1986) (noting the distinction between free speech and establishment of religion in determining irreparable harm). This is also not a case where the state is interfering with the plaintiffs’ ability to freely exercise their religious beliefs. City of St. Charles, 794 F.2d at 274. The potential harm in this case, assuming that the legislative prayer at issue is unconstitutional, is a harm to the public in general: the erosion of religious liberty and freedom that may arise due to a state’s impermissible affiliation with religion. Id. at 275. Such a harm is of the greatest importance — the Establishment Clause, of course, represents a value held so highly by the Framers that it was included in the First Amendment. But it does not follow that the religious freedoms we hold so dear will be irreparably injured in the time that it takes this court, and 'possibly the United States Supreme Court, to evaluate the constitutionality of Indiana’s legislative prayer. Any doubt on this issue is dispelled by the fact that the Indiana General Assembly has been engaged in this practice for nearly two centuries.
The harm which leads me to conclude that a stay should be granted is also of a public nature. Federalism concerns demand that we recognize the important interest the Indiana General Assembly has in conducting its internal practice of legislative prayer unfettered by a federal court’s injunction — even one narrowly drawn. The injunction issued in this case covers a deeply rooted tradition that “has become part of the fabric of our society.” Marsh, 463 U.S. at 792, 103 S.Ct. 3330. More to the point, this is a “special case” that deals with another sovereign’s “internal spiritual practices.” Van Zandt v. Thompson, 839 F.2d 1215, 1219 (7th Cir.1988). And as such, we owe deference to the Indiana General Assembly’s practice with regard to legislative prayer. Id. (explaining. that Marsh reflects a “degree of deference to the internal spiritual practices of another ... sovereign”). That deference cautions that we as federal judges should move prudently in this very sensitive area of constitutional law, which includes being reluctant to interfere with a state’s internal spiritual practices until it is clear that it is necessary.
Deference is certainly due here. The Indiana General Assembly, democratically elected by the citizens of the State of Indiana, has been opening its sessions with a prayer or invocation, frequently delivered by a religious cleric, for the last 188 years. If for those past 188 years the legislative prayer at issue here has occurred on the wrong side of what is at best a murky constitutional line, then we can at least provide the clarity of our opinion before placing a state legislative body under federal supervision.
The legal uncertainty caused by the special place legislative prayer holds in our nation’s heritage and our Establishment Clause jurisprudence, the absence of irreparable harm, and the deference due to another sovereign’s internal spiritual practices require that we stay the district court’s injunction at least until we can determine for ourselves whether a constitutional violation has occurred.